May it please the court. My name is Heather Geblin-Hacker. I represent the appellants in this case, ASU Students for Life, and the individual students in this matter. At this time, I would like to take the opportunity to reserve three minutes of my time for rebuttal. You have a clock in front of you, and whatever's left that's either green or yellow is yours. If it's red, it's mine. Yes, Your Honor. This case is about the right of students to engage in speech on a public college campus. The university in this case, Arizona State University, has changed the policies at issue twice during this litigation, the last time during the midst of this appeal, in an obvious attempt to moot this case and evade this court's review of their policies. But the students' claims against the former policies are not moot because of the doctrine of voluntary cessation. Thus, the court should proceed to the merits of this case, where the most important questions at hand are whether the outdoor zones at the heart of ASU's campus are a public forum, and whether ASU... May I ask if you have objections to the new policies adopted by ASU? Your Honor, we are not challenging the new policies. And you don't intend to? We have not seen how these policies have been interpreted or implemented by the school. But barring some strange implementation, do you see any objection to the new policies? At this time, I don't, Your Honor. They're consistent with the arguments you're making, in other words, that what was wrong before has been corrected with these new policies. I think at this time they appear to be consistent with the Ninth Circuit's court, or precedents. Well, more than the Ninth Circuit. Any U.S. Supreme Court decisions, or anything else? Yes, Your Honor. Thank you. I'm puzzled by what you think the university might go back to. So they had their one zone requirement, which was unwritten, and their insurance requirement that was unwritten. And now they have a written policy that essentially applies the same policies. And the insurance policy is essentially in line with one of our recent cases, Long Beach Area Peace Network. What are they going to go back to? Why is there any real concern that they might go back to an unwritten policy? Well, I think the concern may be that they might go back to the policy that they adopted after they put the policies in writing, which was a couple months after we filed the complaint in this case. That policy was written, and that is what we are challenging in this appeal. The doctrine of voluntary cessation states that the case is not moot if the defendant voluntarily ceases the challenged conduct. And the case should not be considered moot unless it is absolutely clear that the challenged conduct cannot be reasonably expected to occur. And there are several things in this case which... But if it is voluntarily ceased, and yet one can be sure that it will not be repeated, that is enough for mootness. The fact that it's voluntary is not enough. It has to be both voluntary and incapable or likely to be reinstated. Yes, that's correct, Your Honor. So if opposing counsel gets up, I'm not saying he will or should, but I'm just saying if he were to say, no, we'll never go back to that, would that moot the case for you? I don't believe so. I mean, you've gotten everything you wanted, right? Well, I don't believe so, Your Honor, because the case law shows that when the defendants have done things like the defendants have done in this case, where they have changed their policies in obvious response to litigation, that litigation motivation is strategic behavior that is looked upon as the defendants are trying to avoid review of their policies. That brings their motivations into question. I'm trying to understand what it is that you are trying to achieve. It's sort of like lawyers not to celebrate a victory when you have it. I mean, it sounds to me, and I want to sort of give you credit, I mean, I don't know what motivated all this, but it sounds to me that it was an issue. You raised it, you litigated it, and it seems to me like you've achieved a victory. And, you know, if you're doing champagne, you should have sort of broken out the glasses and the bottles and said, that's great, let's just make sure that it doesn't happen again. Are we talking attorney's fees here? Are we talking that you're worried about the district court decision and having it vacated? Well, as I understand it, they're claiming monetary damages, is that right? Yes, Your Honor, they do have a claim for nominal damages. And what damages are you seeking? I mean, you were allowed 13 zones at the end of the day, so what are the monetary damages you're seeking? They're simply nominal damages for the unconstitutional policy at issue, which the courts have held is the proper remedy for damages speaking for constitutional violations. And you haven't been able to get a dollar out of them? No, Your Honor, and, you know, one of the things that, you know, why this case has not really been resolved yet is that the defendants have, as I mentioned,  and they also continue to defend their old policies, which is a key factor, because if the defendant continues to defend their old policies, they don't see anything wrong with it. And especially where we have here, the district court opinion is actually in their favor. There's no legal bar to them changing their policies back. There is no indication on their behalf that they believe their prior policies were wrong. So there is a very real danger, according to the case law, that they would revert back to their old policies. Well, on the one zone policy, what was ultimately applied to your client is the same as what their written policy is now. They said you can have additional zones as available. So you're saying, well, so as applied, you got what you would get under the new policy, which you say is objectionable. On the insurance, though, they had asked for general liability insurance, and now under their written policy, they just track Long Beach Area Peace Network. So are you saying that there's a possibility they would depart from the safe harbor, to the extent that is in Long Beach Area Peace Network, and go back? Just focusing in, is that the real concern? Yes, Your Honor, because in their briefs, they actually argued that Long Beach Area Peace Network did not require them to have a valid alternative to the insurance requirement. So they're reading the cases differently than we believe they should be read, and they continue to defend the old policy's constitutionality. If their old policies, if they believe their old policies are consistent with the Long Beach case, then that presents a very real danger that they will revert back to the old policies. And that means that the case is not moot. There was another case that we discussed in the briefs that comes out of the Third Circuit, involving similar facts, Dijon versus Temple University. And in that case, Temple University changed their sexual harassment policy, which was the policy at issue in the case, three weeks before the summary judgment deadline. And the Third Circuit held that they upheld the granting of a permanent injunction, based on the fact that the university continued to defend their old policies, and they changed the policy only in response to litigation. So they ruled that there was nothing to prevent them from changing their policy back, and there was still a real need for the court to uphold that permanent injunction against the old policy to prevent them from reverting back to that policy. And that case also examined the Supreme Court's holding in parents involved in community schools, where there was a similar thing that happened. The district suspended the policy at issue during the midst of the litigation, and they continued to defend that policy throughout. And the Supreme Court held that the challenge to that policy was not moot, because it could be revived at any time. But even assuming that we would find there isn't a chance of them going back, or it isn't clear that they would go back, you're saying it's still not moot because of the nominal damages. And I think, wasn't there $100 for the insurance that was paid by your clients as well? So do we still have to go forward and decide those issues, even if we disagree on the voluntary cessation point? Well, there is a claim for nominal damages. The claim for the $103.25 that they paid for insurance, I believe, would probably be related to their as-applied challenge, which we did not raise at the appellate level. So I believe what is at issue is the nominal damages. Is there any evidence of viewpoint discrimination in this case? We believe there was below, Your Honor, but we did not raise that issue here. We are focusing on the facial constitutionality of the policy at issue. And that was my understanding. That was just like a time, place, manner requirement, and you're focusing particularly on the insurance. Is there anything left of the one-zone policy as not being a valid time, place, manner restriction, or are we just looking at the insurance requirement? Well, previously, Your Honor, after they had put their policies in writing after we filed the complaint, the one-zone policy stated that a student group may only reserve one zone per day, and that was it. There were no exceptions to that rule. There was no opportunity for the students to reserve more than one zone, even if no other people were using the zones. They allowed for people to reserve more than one zone if they had a co-sponsor for that number of zones, which essentially favors popular speech over speech that may not get as much favor on campus. And so we do challenge that policy as well. Now they have put that policy, they have changed that policy, and now they do allow student groups to make special requests for additional zones, which we think is an obvious and more narrowly tailored alternative to the original policy, which really undercuts the rationale for the policy that was in writing to begin with. They stated that their interest was coordinating uses of the forum and in making sure that there was no monopolization of the forum by one group. But as a practical matter, they in fact did allow groups to obtain more than one zone when available, right? In fact, your clients got more than one zone, and the one time when, if I can remember correctly, when they couldn't, they got a zone that was big enough to accommodate what they needed to do. Isn't that right? Yes, at that time the policy was unwritten, and they did make an exception. Well, there was a written policy which seemed categorical, but in practice it wasn't categorical. It's like a lot of things in administrative issues. The rules may be categorical, and the administrators exercise discretion anyway. It's not that uncommon, particularly on college campuses. Yes, Your Honor. When that policy was actually applied, when they were giving the extra zone as an exception. There's nothing really wrong with that unless it's applied in a discriminatory fashion, unless they say, you know, we make subrosa exceptions for certain viewpoints, accommodate some but not others, or we accommodate students based on race but not, you know. But there's no evidence of that here. Basically, it sounds to me like they tried to work with whatever group. Despite the categorical limit to one zone, they did try to work with groups to try to accommodate them, right? Well, the categorical rule came after these events occurred. These events, when they were given the extra zones as an exception, occurred before we filed the complaint. After we filed the complaint, a couple of months after we filed the complaint was when they put the policy in writing, and it became a categorical strict rule that you can only have one zone per day, and that's it. There were no other exceptions evident on the face of the policy. There's nothing in the record and nothing that I'm aware of that indicates that they did make any exceptions after that point where they put the policy in writing. But previously, when they were applying the one zone policy to the students' events that are described in the record, at that time it was unwritten. I see. It was totally unwritten. Even the one zone policy was unwritten? Yes. Both of them were unwritten at the time we filed the complaint, Your Honor. What is the situation now? Now they put the policy in writing after we filed the complaint, and that was the categorical rule, one zone per day, that's it. Now they have changed the policy. During the briefing schedule, they've changed the policy again, and now they do allow groups one zone per day, but they allow them to make special requests for additional zones based on the availability of the zones. And, in fact, that's what your client received, the 12 or 13 additional zones, correct? Yes. Ultimately, back in 2006, that's actually what they did. So, you know, the new policy is an obvious, more narrowly tailored alternative to the written policy that we are challenging that was adopted. You've got less than two minutes left. Would you want to reserve? Yes, I would like to reserve the remainder of my time for rebuttal. Thank you. Thank you. We'll hear from opposing counsel. Good morning, and may it please the Court, I'm Michael Goodwin for the appellees. Do you have a dollar in there? Well, the only issue that's before this Court is the plaintiff's claim for nominal damages, because there's no live controversy as to their claim for injunctive relief. Well, do you represent, as the authorized representative of the appellees, that the old policies that were the subject of the judgment in the district court are not going to be reinstated and re-implemented? Absolutely. They're gone. It should be apparent, Your Honor, from the- Well, it isn't apparent. You represent to us that it's not going to be returned to the old rules. Right. Yes, I am saying that, and I'm saying that because the reason for the adoption of the new policy was to make sure the university policy was in compliance with this- Well, it must have been because there was this suit filed, because the policy was changed the day before the appellee's brief was due. That's a little unusual. The policy was adopted, was posted the day before. Yes. The policy, Your Honor, was being written and revised for months prior to that, and Plaintiff's Counsel was aware of that. In July of 2008, I was communicating to Plaintiff's Counsel that the policy was being revised. In September, I provided a draft of that policy, which is substantively the same as the one that was adopted. Okay. I mean, without sort of going into all the details of the history, you don't dispute the point, which I think is what Justice McConnell is getting at, is that your client changed the policy in response to this lawsuit. There's nothing shameful about that. I mean, in many ways, it's commendable to try to remove a legal controversy and try to work with students to make things better. So, I mean, you're not giving up anything by saying that. I think it's a good thing. I wish more litigants were willing to work with each other to accommodate and, you know, resolve legal controversy. But the basic point is you had a policy, they brought a lawsuit, and your client changed to try to meet their objections. Is that the history? Your Honor, I would generally agree with that, but what I would say is that the policy revision was more motivated not by the lawsuit, but by this court's decision in the Long Beach Peace Network, which came down while this case was on appeal. I see. So we were responding more to what we perceived as a change in the law rather than the lawsuit itself. Now, are you saying that you're just going to the merits for a moment, that the prior unwritten insurance requirement that was interpreted as you need to have general liability insurance, are you still arguing that that still passes muster as an appropriate time, place, and manner requirement under, say, Santa Monica Food Not Bombs? Or do you agree that Long Beach Area Peace Network sets a requirement that tracks what you have in the current 2008 policy? Are you still saying that the prior unwritten general liability policy could pass muster, notwithstanding Long Beach Area Peace Network? I interpret Long Beach as suggesting really for the first time in this circuit that in order to be constitutional, there needs to be an alternative to insurance. In other words, the university or any governmental entity can't say insurance is required for all private users of government property. The current policy is more flexible, and it provides an alternative. Instead of requiring insurance in every case involving a non-university entity, where a non-university entity is involved in activities on campus, and now there's the event request form, ask questions about the nature of the event, and if the event involves expressive activities, then insurance is really not required. It's optional. 2008 policy, but your unwritten policy, which you said you need to get general liability coverage, are you defending that? Are you saying that that is a valid time, place, and manner restriction? And if so, what's your argument on that? Well, our argument is that the prior policy was lawful and constitutional under the law at the time, and the current policy is constitutional under the current precedent. Constitutional hasn't been amended since. So if the old policy is unlawful under current law, current law is simply a further interpretation of the Constitution, so the old policy would have been unlawful then, right, whether you had a case specifically saying that. That is correct. That's what seemed to follow. We're not doubting the good faith of your clients in adopting the policy, and of course changing it as soon as there was a new revelation as to what the Constitution means, but the fact remains that if it was contrary to our current interpretation, then it really was unlawful, right? That's correct. So are you arguing more that it wasn't clearly established for purposes of the qualified immunity analysis, not that it was, but you're not defending the constitutionality. You're just saying nobody knew at the time. Is that correct? Am I understanding you correctly? Well, I'm saying that the constitutionality of the former version of the policy is really an academic point, because what is at issue here, if the plaintiff is making a claim for injunctive relief, what should apply would be the current version of the policy. To the extent that the plaintiff is seeking damages against the two individual defendants, Schrader and Ramage, then we would really not be looking at the policy so much, the former version of the policy, but we would be looking at the actions, the conduct of the individuals, because the claim for damages against the individuals is based upon their alleged unconstitutional conduct. I thought we had just heard from them. They think they're entitled to nominal damages, so what are you talking about now? Something else? No. They said nominal damages, so what do we do about that? Whether it's nominal damages or actual damages. Well, there's a big difference. There is a difference. Yes. But it's still got to be based on whoever the damages are awarded against. It's got to be based on something unconstitutional that the person did. Fair enough, but in the end, we're only talking about nominal damages, and nobody likes to pay any damages at all, and even nominal damages sting if they're not deserved, or sometimes they sting when they're deserved. Sometimes they sting particularly when they're deserved. But we're really only talking about a nominal amount. It's not a large amount of money, just $1, $10, $100, something of that sort. So let me ask you this. Assuming there's something, I must tell you, from a court perspective, uncomfortable about having to rule on the constitution of something that no longer is and no longer is likely to be. Now, you look like a reasonable man, and counsel over there look perfectly reasonable. Is there any reason why you all haven't settled this case? Split the difference, pay $0.50, or acknowledge that they have helped you serve the constitution by tailoring your policy to make it more consistent with precedent, and move on? Is there any reason why we have to write an opinion that will speak to matters that no longer exist, even if the case is technically not moved? Any reason why counsel can't solve this case among them? Well, Judge Kaczynski, I think you hit on it earlier when you suggested that there was an attorney's fees issue lurking. I didn't get an answer to that. Is attorney's fees the issue here? That would be my guess. I don't want to go back into detail of the correspondence between counsel that we had when the policy was being amended. I don't want you to. I'm certainly not going to ask or imply that I want to know anything about any settlement negotiations or anything of that sort. So I'm not going there. I'm trying to figure out what is it that's really, other than the opportunity to argue before this very fine group of students and faculty members, what is it that's really dividing the parties, who commendably to me seem to have come to a, they brought a lawsuit, they helped you focus on the issue and tailor your policy, and everybody's better off. So what is it that really is still dividing you all that would force us to rule on a matter, on a policy that no longer exists? Well, I don't want to go back to it. And that you've told us never will come back. I would have to say it's the attorney's fees issue because we thought that when the policy was amended that that might be the end of it. But here we are still, you know, still. It can't be that much or that big a deal, the attorney's fees. You don't think that if we, for example, were to defer submission for two weeks, you and opposing counsel could work this out amongst yourselves? I mean, after all, lawyers, you know, litigation is only one part of lawyering, not necessarily the most productive part. Lawyers are counselors and healers. And wouldn't this be a good opportunity for lawyers to do something that actually enhances a common good rather than try to fight it out and have all the costs associated with having a, you know, basically a battle, you know, with winners and losers? I understand the point. I don't know if the case could be resolved. Well, for your part, do you think, would you be willing to, if we were to defer submission in this case for a couple of weeks, would you be willing to work with your clients and opposing counsel in good faith to try to achieve an amicable resolution? We'd certainly be willing to talk. We have talked. I'm not asking for any commitment to resolve. I understand you can't do that without your clients, but, you know, you've heard our questions. You've seen our concerns. That should strike me as an incentive for you to think about making the case go away. And everybody can claim to be a winner. And, in fact, it's not an empty claim. It's a real claim that everybody is a winner when, through the process of litigation, through the process of settlement, you get something that's closer to what the Constitution requires. Anyway, I will have to confer with my colleagues as to whether they wish to do that, but I just wanted to sound out what you're feeling. And I'll ask opposing counsel the same question. So you've got a couple of minutes left, if you wish to take it. Well, yes. I just wanted to go back briefly to what we think is still the one part of the case that is still alive is the claim for individual liability, even if it's just for nominal damages, even if we were to assume, just for the sake of argument, that the prior policy was unconstitutional. It does not follow that liability may be imposed in any amount on an individual. Because of qualified immunity. Because of qualified immunity. In 2005, well, excuse me. Is there a Monell claim here? I beg your pardon? Is there a Monell claim? No. It says at all. The university is not. Well, no. There were three for liability purposes, nominal damages. Initially, there were three defendants. One of them has been dropped. That was Michael Crow. So now the only claims for damages, nominal damages, are against Judy Schrader and Sally Ramage. And that claim for nominal damages is predicated upon the alleged facial unconstitutionality of the former policy. And what I am saying to you is that the facial unconstitutionality, even if you assume it existed, is not a basis for imposing damages in any amount against the individual defendants. You have to show, the plaintiffs would have to show, and they really made no argument on this, that the individual defendants did something that was unreasonable in light of established law. And if you go back to, and this really involves an as applied analysis, but if you go back and look in 2005 when the controversy first came up about the Justice for All exhibit, the only case that this court had dealt with the insurance requirement in the First Amendment context was the Garrison case. And the Garrison case from 1993 did not remotely suggest that there was any constitutional infirmity with an insurance requirement. So the actors for the university were acting reasonably in light of clearly established law. That's why they're entitled to qualified immunity for damages, nominal damages, too. Thank you. My time is up. Thank you. Ms. Gabon?  Yes, Your Honor. Okay. Your Honor, this case is really about the principle. And for our clients, the students and student organization, they need a bright line rule. They need assurance that this policy will never be enacted against them again. Well, you've got it today in open court. You heard that. So did I. I heard it. Yeah, I heard it. I heard it, too. Yes, Your Honor. Not what you wanted. Yes, Your Honor, but it doesn't have the force of law. And so by Well, you don't for one minute suggest they're going to go back on that, do you? Not for one minute. In front of us, you want to say that? Well, I don't know. If they're going to go back on what was just said here in open court today? Well, I'm not sure, Your Honor. That was the representation. Oh, come on. That was the representation of their attorney. Well, there's a doctrine called judicial admission. And the way it works is, you probably haven't had a chance to research this, but if a party makes a presentation in court that then causes the court to rule a particular way, then in this case the presentation would be of they don't plan to go back. And if that would cause us to say it's moot, then that's binding on them. It's like it has a force of law. And if they ever go back on it, you can raise it in litigation, get a transcript of the hearing, and we'll be there for you to confirm that we all heard it. Well, I certainly appreciate that, Your Honor. So is there any interest or is there any possibility of, as long as this case is amicably? I really do think you and your co-counsel ought to be proud of having achieved a very fine victory without having to have sort of the ultimate battle on it. You know, you have caused the university to change and to reexamine and reconsider. And is there any reason why you think that you and opposing counsel couldn't work out the remaining issues so as to avoid the discomfort that we would have in having to rule on a policy that basically exists nowhere? It's a hypothetical policy at this point, particularly in light of opposing counsel's presentation. They don't ever plan to go back to that. I think that, you know, we are certainly willing to talk to them. You know, I can't make any representations. I think you should buy them a bottle of champagne and claim victory and then see what you can work out. Well, let me, do you have anything? You are in overtime right now. Yes, I am out of time. Any final thoughts you have? Would you like me to address the qualified immunity issue? That is a good question, yes. They do claim qualified immunity over that $1. Yes. And I think that when you look at the actions of the defendants in this case, they were unreasonable. We did not have the Long Beach case yet. But when you look at what they did and they applied the insurance requirement to the JFA exhibit on one hand, it was a large physical exhibit, and then they applied it to the Dignity of Life Week, which was basically just the students sitting at a table with representatives from community pro-life groups. That presents no risk whatsoever. And when you put in context that these same university officials were advised by their counsel that they should not be applying these policies, that they should be careful in doing this, and that they should distinguish between vendors. But there was no case dealing with insurance. And the university does have legitimate concern, does it not, when non-students are invited on campus for activities that might arouse passions. I don't talk about your particular case or your particular client, but oftentimes when you have demonstrations, people demonstrate or have protests over something that people feel strongly about. You don't think the university has a legitimate reason to want to say, fine, our students is one thing, but before we allow outside organizations in to do that, we want to make sure that our students are covered in case some injury occurs. You know, the big placard falls over, hurts somebody, or there's a scuff. That strikes me as a perfectly legitimate thing to be concerned about. Well, I think that it would be legitimate perhaps in a situation where there was some risk, but it wasn't in the case of the Dignity of Life Week where they applied that. I think that was blatantly unreasonable. But ultimately they weren't required to get insurance, right, on just the table? They were, actually. There were several different groups that came, and two of the groups did submit insurance certificates, did comply with the insurance requirement because they already had insurance. There was another group that did not have insurance, and the requirement for them was waived essentially at the last minute based on an ad hoc reason. It was not in the face of the policy. But they did have to comply with that requirement in order to have the event, and they would have had to comply with that requirement for any future events on campus that involved a third party in their speech. Okay, thank you. Thank you. Are you going to defer submission? We will decide later and let counsel know whether we defer submission or whether we will submit the case. Thank you for an argument.
judges: O'connor, Kozinski, Ikuta